IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Washington Prime Group Inc., *et al.*,[1] | § | Case No. 21-31948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**SVP'S: (I) OPPOSITION TO THE EMERGENCY MOTION OF THE OFFICIAL EQUITY COMMITTEE TO COMPEL SVP TO PRODUCE A NARROW SET OF INTERNAL DOCUMENTS AND (II) CROSS-MOTION FOR A PROTECTIVE ORDER**
Ref. Docket Nos. 729 & 737

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NO LATER THAN 5:00 PM ON AUGUST 3, 2021.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Strategic Value Partners, LLC and its affiliated funds ("**SVP**" or the "**Plan Sponsor**"),[2] respectfully submits this (1) Opposition to the Official Equity Committee's (the "**OEC**") *Emergency Motion of the Official Equity Committee to Compel SVP to Produce a Narrow Set of Internal Documents* [Docket No. 729] (the "**Motion to Compel**") and (2) emergency cross-motion for a protective order to quash or limit the OEC's demand for a deposition of SVP (the "**Cross-Motion**"). In support, SVP states as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/washingtonprime. The Debtors' service address is 180 East Broad Street, Columbus, Ohio 43215.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion to Compel.

**PRELIMINARY STATEMENT**

1. On July 26, 2021, the OEC served the Debtors with 36 document requests essentially seeking every document concerning the finances of the Debtors for the last two-and-a-half years, plus four deposition notices. Shortly thereafter, the OEC informally served SVP with 20 document requests and a notice of deposition. Although SVP has serious reservations as to whether *any* of the discovery requests propounded on it are sufficiently relevant to confirmation of the Debtors' Plan, SVP sought to compromise.

2. Following two meet-and-confer sessions and additional correspondence, the parties have reached general agreement on the parameters of discovery save for one issue: whether the OEC is entitled to SVP's private, internal communications concerning the Debtors' marketing and bidding process—specifically (i) the amount of time the Debtors allowed for bids; (ii) the purported $2.3 billion cash requirement for a bid to be considered "qualified"; (iii) the anti-collusion provisions; (iv) the forbearance of the Debtors' debts with respect to SVP and other potential bidders; and (v) the process by which the Debtors chose bids (collectively, the "**Priority Requests**").

3. SVP believes that its internal strategic thinking regarding the Priority Requests are irrelevant to confirmation. Indeed, this Court and others have repeatedly shielded the internal communications of a non-debtor (such as a plan sponsor or bidder) from discovery because such information is irrelevant to confirmation and because it is unduly burdensome to require such a party to divulge its strategic and proprietary information. Indeed, allowing a fishing expedition into SVP's internal communications could have a chilling effect on other participants in these and future chapter 11 cases, including potential bidders and plan sponsors who do not wish to see their private strategic documents become the subject of discovery and litigation.

4.      The OEC's case is exceedingly weak here given that the Debtors have agreed to produce communications between SVP and the Debtors regarding these very topics, and SVP has agreed to produce any related communications with third parties.  The OEC will have all it needs to test the business judgment of the Debtors at confirmation, including whether the marketing process, as run, appropriately determined the highest and best bids for the Debtors' business.

5.      For the same reasons, SVP respectfully requests that the Court either quash the deposition notice sent by the OEC or limit its scope to SVP's knowledge regarding the factual details of the Debtors' marketing process.  The OEC should not be allowed to ask an SVP witness questions about topics that are outside the scope of permissible document discovery.

6.      More fundamentally, SVP is concerned that the OEC's focus on discovery is a harbinger of wasteful litigation to come leading up to and during the confirmation hearing.  Beyond this discovery dispute, the OEC appears to be planning to wage a full-fledged valuation fight at the confirmation hearing, replete with desktop valuations from experts and all the litigation entails. Although the OEC has stood down from its slew of valuation requests to SVP, the OEC continues to press the Debtors for extensive valuation discovery and, on information and belief, plans to offer a desktop valuation of the Debtors from one or more experts at the confirmation hearing.  While the Court offered its view as to the utility of such theoretical valuations at the most recent hearing, the OEC appears to be ignoring the message.  In addition to adjudicating the instant dispute, SVP believes that the parties would benefit from additional guidance from the Court regarding the conduct of the confirmation hearing, including the role of valuation experts.

7.      For the reasons set forth below, SVP respectfully requests that the Court deny the Motion to Compel and grant SVP's Cross-Motion for a protective order.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(a). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

10. On June 13, 2021, the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing the above-captioned bankruptcy cases. The Debtors continue to operate their business as debtors in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

11. On July 15, 2021, the U.S. Trustee appointed the OEC. *See* Docket No. 361.

12. On July 27, 2021, the OEC informally served upon SVP 20 document requests[3] and a notice of oral deposition.[4] In the interest of efficiency, SVP agreed to accept the Requests and Notice as though they had been properly served by subpoena.

13. On July 29, 2021, the Court entered the *Stipulation and Agreed Order (1) Rescheduling the Combined Hearing, (II) Extending the Voting, Objection, and Other Combined Hearing Deadlines, and (III) Setting a Discovery and Litigation Schedule for the Official Committee of Equity Security Holders Related to the Combined Hearing* [Docket No. 704] (the "**Scheduling Order**"). The Scheduling Order requires the parties to serve discovery requests by July 30, 2021; to substantially complete the production of documents by August 11, 2021, at 12:00 P.M. (prevailing Central Time); and to complete fact depositions by August 18, 2021. *Id*.

---

[3] Mot. to Compel, Exhibit 1 (the "**Requests**").

[4] Mot. to Compel, Exhibit 2 (the "**Notice**").

4

14. Also on July 29, 2021, counsel for the OEC and SVP met and conferred by telephone. During that call, counsel for the OEC stated that the OEC's priority in discovery was for SVP to produce documents responsive to the Priority Requests. Counsel to SVP stated that the Debtors were already producing communications between SVP and the Debtors regarding the Priority Requests, so it was unnecessary for SVP to produce the same documents. Counsel to SVP further stated that although the relevance of the Priority Requests to confirmation was far from clear, in the spirit of compromise, SVP would consider producing any communications with third parties regarding the Priority Requests, but not SVP's private, internal communications. Counsel to SVP observed that purely internal documents regarding SVP's private strategic thinking are wholly irrelevant to the Debtors' business judgment and, therefore, outside the scope of the confirmation hearing. The OEC continued to press SVP to produce its internal communications.

15. The next day, on July 30, 2021, the parties held a follow-up meet and confer, addressing specific issues that the parties had resolved or made progress in resolving. SVP reiterated its offer to produce any third-party communications responsive to the Priority Requests, but that it would not produce SVP's internal documents. The parties crystalized their positions in further email correspondence, and the OEC's Motion to Compel followed.

16. As set forth in the Motion to Compel, the only current dispute between SVP and the OEC is whether SVP should be compelled to produce its private, internal communications that reveal its strategic thinking regarding the Priority Requests. However, it is necessary at this point to also resolve the extent to which SVP must submit to a deposition. Each of these issues is addressed below.

**RELIEF REQUESTED**

17. Because the information the OEC seeks from SVP is not relevant to confirmation of the Plan, SVP respectfully asks this Court to: (1) deny the Motion to Compel; and (2) enter a protective order, substantially in the form attached hereto, quashing the OEC's deposition of SVP, or in the alternative, limit the deposition to SVP's knowledge regarding the factual details of the Debtors' marketing process.

**ARGUMENT**

**I.     The OEC's Request for SVP's Internal Documents Should Be Denied Because Such Documents Are Irrelevant to Confirmation and It Would Be Unduly Burdensome to Produce Them**

18. The Court should deny the Motion to Compel seeking SVP's internal communications regarding the Priority Requests. SVP's private strategic thinking is not relevant to the confirmation hearing, which turns on whether the *Debtors* exercised sound business judgment and conducted a proper marketing process.

19. The OEC has failed to articulate why SVP's internal communications are relevant and proportionate to the burden such requests impose. The focus of confirmation will presumably be on the Debtors' business judgment and whether the marketing process conducted by the Debtors appropriately determined the highest and best bids. SVP's internal communications are simply not relevant to these topics, and the Motion to Compel fails to articulate any reasonable connection. *See, e.g.*, *In re Adkins Supply, Inc.*, 555 B.R. 579, 585-86 (Bankr. N.D. Tex. 2016) ("Rule 26(b)(1) defines the scope of discovery as 'any nonprivileged matter that is relevant.'") (internal citation omitted); *In re McCarble*, Case No. 14-3210-H3-7, 2015 WL 1407311, at *3 (Bankr. S.D. Tex. Mar. 25, 2015) ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

6

20. Moreover, the Debtors are making substantial productions in response to the OEC's extensive discovery requests, rendering SVP's internal communications discussing these topics even less probative. *See, e.g., Balcacer v. Sam's East Club Inc.*, Civ. A. No. 4:19-CV-03840, 2020 WL 1934851, at *1 (S.D. Tex. Apr. 22, 2020) (Under Federal Rule of Civil Procedure 26(b)(2)(C), the district court must limit the extent of discovery "[w]hen the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"); *Slipchenko v. Brunel Energy, Inc.*, Civ. A. No. H-11-1465, 2013 WL 12137785, at *1 (S.D. Tex. June 18, 2013) (same); *In re Trevino*, 564 B.R. 890, 905 (Bankr. S.D. Tex. 2017) (same); *see also Ntakirutimana v. CHS/Cmty. Health Sys.*, Inc., Civ. A. No. L-09-114, 2011 WL 13135608, at *1 (S.D. Tex. June 28, 2011) (noting that "a request for production of documents to a party and a duplicative third-party subpoena, when the party is in 'control' of the documents in possession of the third party, may be improper under the Federal Rules," and finding that requests issued to third parties were unnecessary).

21. The OEC's argument that SVP is relying on the "business strategy privilege" is a red herring. *See* Mot. to Compel at 8. SVP is not relying on the "business strategy privilege" but is instead relying on case law—including several rulings of this Court—stating that the internal strategic thinking of a non-debtor is generally *irrelevant* to confirmation, and that it would be unduly burdensome to require the disclosure of such sensitive and proprietary material.

22. SVP's position is entirely consistent with this Court's ruling in *In re Legacy Reserves Inc.*, No. 19-33395 (Bankr. S.D. Tex.) (Isgur, J.). In that case, the Official Committee of Unsecured Creditors argued "that the RSA parties . . . put[ ] forward a plan in bad faith" and that it "should be entitled to see the internal documentation from [a plan sponsor] leading up to the [Restructuring Support Agreement], . . . and how that relates to . . . good faith (indiscernible)."

Hr'g Tr. at 7:11-12, 20-24, *In re Legacy Reserves, Inc., et al.*, No. 19-33395 [Docket No. 585] (Bankr. S.D. Tex. Oct. 8, 2019) (attached hereto as **Exhibit 1**).  This Court ruled that discovery into a plan sponsor's "internal assessments" was "disproportionate to the dispute" because it "would be unduly burdensome for [the plan sponsor] to produce that information" and because "those internal assessments will not affect the Debtors' good faith."  Hr'g Tr. at 9:10-18, *In re Legacy Reserves*, No. 19-33395 [Docket No. 596] (Bankr. S.D. Tex. Oct. 10, 2019) (Isgur, J.) (attached hereto as **Exhibit 2**).

23.  The OEC attempts to distinguish *Legacy Reserves* by arguing that the holding was limited to "sensitive internal valuation material" and would not apply to "the terms of a bidding procedure that already has been disclosed and entered on the public docket in the form of an order." *See* Mot. to Compel at 9.  That is a distinction without a difference: sensitive internal material is sensitive internal material, regardless of whether it relates to valuation or other strategic analysis that a plan sponsor has not disclosed to the public.  The OEC's requests do not seek information "that already has been disclosed" to the public—they seek the opposite.  And in any case, the information the OEC seeks here is irrelevant to confirmation.

24.  SVP's position is likewise supported by this Court's discovery rulings in *In re Speedcast Int'l Ltd.*, No. 20-32243-11 (Bankr. S.D. Tex.) (Isgur, J.).  In that case, an objecting creditor filed a motion to compel requesting the production of the plan sponsor's "internal communications, opinions, and valuations,"[5] as a result of both the Debtors' productions and the plan sponsor's third-party communications, which suggested that the plan sponsor improperly influenced the plan formulation and "Plan Sponsor Selection Proceedings."  *See id*. at 6.

---

[5] *Black Diamond Capital Management, L.L.C's Emergency Motion to Compel Production of Documents From Centerbridge Partners, L.P.*, *In re Speedcast Int'l, Ltd., et al.*, No. 20-32243 (Bankr. S.D. Tex Nov. 20, 2020) [Docket No. 972].

8

Specifically, the objecting creditor cited documents produced by the Debtors where executives purportedly discussed the plan sponsor's scheme to "buy the votes" of trade creditors, as well as third-party communications in which the plan sponsor instructed the Debtors' management to tell trade vendors: "Don't sell your claims. For goodness sake, we need you to support this Plan and vote on this Plan." Hr'g Tr. at 11:16-12:05 *In re Speedcast Int'l, Ltd.*, No. 20-32243 (Bankr. S.D. Tex Dec. 7, 2020) (Isgur, J.) (attached hereto as **Exhibit 3**). This Court held that while it was necessary to understand the problematic documents on an evidentiary basis "in general – if [a creditor is] going to give them all the external communications and if there isn't any showing of something untoward going on internally. . . [the objecting creditor] doesn't get to know how the sausage is made by a bidder[.]"[6] *Id.* at 20:14-21:03.

25.     The OEC's quest for SVP's internal documents is no small matter. This Court and others have recognized that the internal documents of a plan sponsor or bidder constitutes sensitive, proprietary information that is ordinarily not relevant to confirmation. *See* Hr'g Tr. at 47:21-48:03, 50:11-25, *In re Cobalt Int'l Energy Corp.*, No. 17-36709 (Bankr. S.D. Tex. Apr. 2, 2018) (Isgur, J.) [Docket No. 717] (denying discovery of bidder's internal subjective valuation because, *inter alia*, it is their "proprietary information," cannot be "the measure" of whether the auction was conducted fairly, and "doesn't demonstrate good faith [or] bad faith") (attached hereto as **Exhibit 5**); Hr'g Tr. at 10:3-10, *In re The Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. May 12, 2014) [Docket No. 284] (stating that the creditor's "assessment or determination of value is not an appropriate area of inquiry, particularly given that the burden that's before the Court—and in this

---

[6] *Id.* at 20:14-21:03 (emphasis added). This Court subsequently proposed that the objecting creditor take a short deposition of the plan sponsor and, absent the requisite showing that it fell into the example of the plan sponsor calling "the Debtor and [explicitly saying] gerrymander," the Court "should protect the confidential information of the purchaser." Hr'g Tr. 27:8-25., *In re Speedcast Int'l, Ltd.*, No. 20-32243 (Bankr. S.D. Tex Dec. 9, 2020) (Isgur, J.) (attached hereto as **Exhibit 4**).

case, the burden would be a plan confirmation burden, that would obviously embrace valuation, but that the burden rests with the debtor, not with [the lender].") Allowing the OEC to conduct a fishing expedition into SVP's private communications—even if such discovery is "limited" to the OEC's Priority Requests—could not only dissuade potential bidders from participating in this case, but the collateral effects could be felt in future cases if potential stalking horse bidders, plan sponsors and auction parties feel that the price for their participation in the process is opening up to the world their private, internal communications regarding strategy. *See In re Seitel, Inc.*, No. 03-12227 (Bankr. D. Del. Nov. 6, 2003) [Docket No. 368] (denying equity committee's request for production of bidder's internal valuations and observing that "[i]f this type of information were required to be disclosed, then the next logical step in discovery would be that the respective bidders['] internal deliberations . . . would be fair game for discovery."); *see also* Exhibit 2, Hr'g Tr. at 9:04-09, *In re Legacy Reserves*, *Inc.*, No. 19-33395 [Docket No. 596] ("The general principle of federal law is that our hearings all need to be open and that we try and search for the truth. We shouldn't impose restrictions that go beyond what is necessary. ***But we also shouldn't be disturbing bidding processes with irrelevant information that will not affect our ultimate decisions***.") (emphasis added).

26. Here, the case for the production of SVP's internal documents is particularly weak given what the Debtors and SVP have already agreed to produce. In particular, the Debtors are producing their communications with SVP regarding the Priority Requests, and SVP will produce any communications with third parties regarding these same topics. While it is unclear how prepetition communications between SVP and the Debtors are related to the question of whether the marketing process actually run by the Debtors determined the highest and best bids, the OEC will receive this discovery and put on the case it sees fit at confirmation. In light of this substantial

offer of production, there is certainly no cause for SVP to also produce its internal documents that reveal its private strategic thinking.

27. Finally, to the extent the OEC is accusing SVP of bad faith or misconduct in an effort to justify an unusual level of disclosure, the OEC's bald assertion that the bidding procedures were "designed to chill the bidding process to the benefit of SVP"[7] is not supported by any evidence.

28. To be sure—and consistent with the Court's comments at the most recent hearing—the OEC is entitled to scrutinize the marketing process and ensure that it was well run and sufficient. The parties are collectively providing the OEC with more than enough discovery to do just that. There is no basis to order SVP to produce internal communications that reveal its private strategic thinking, and the Motion to Compel should be denied.

## II. Good Cause Exists to Enter a Protective Order Quashing the OEC's Notice, or in the Alternative, Limiting the Scope of the Notice

29. A protective order is necessary and appropriate here under Rule 26(c) of the Federal Rules of Civil Procedure because a deposition of an SVP representative is unnecessary and unduly burdensome.

30. Rule 26(c) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 9014 of the Federal Rules of Bankruptcy Procedure, provides that the Court may, for good cause, issue a protective order on request of a party from whom discovery is sought. Fed. R. Civ. P. 26(c); *see also In re Skyport Global Commc'ns, Inc.*, 408 B.R. 687, 691 (Bankr. S.D. Tex. 2009). Under Rule 26(c), this Court has broad discretion to impose reasonable

---

[7] Mot. to Compel at 4.

limitations on discovery—including "forbidding" the requested discovery to "protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c)(1).

31. A party is entitled to a protective order by demonstrating good cause and a specific need for protection. *See In re Skyport*, 408 B.R. at 691. In making this determination, "[t]he court must balance the competing interests of allowing discovery and protecting parties and deponents from undue burdens." *Williams ex rel. Williams v. Grenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002); *see also, e.g., Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994) (affirming protective order because the broad discovery requests would have subjected defendant to undue burden, expense, and annoyance) (internal quotation marks and citation omitted); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (affirming protective order where "no discovery was needed to resolve the motions to dismiss . . ." or summary judgment motion, and thus, "the deposition would be unduly expensive and burdensome").

32. More generally, a court can and should limit proposed discovery that is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Curtis v. Metro. Life Ins. Co.*, No. 3:15-CV-2328-B, 2016 WL 687164, at *3 (N.D. Tex. Feb. 19, 2016). This proportionality standard requires consideration of, among other things, "the importance of the discovery in resolving the issues [at stake in the action], and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (b)(1). A court "must" limit discovery when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

33. The only relevant issue here is the confirmation of the Debtors' Plan and the conduct of the Debtors' marketing process. Therefore, the OEC's deposition should be quashed

in its entirety because nothing SVP has to say is relevant to the **Debtors'** business judgment and how the Debtors conducted the marketing process. The OEC is already taking multiple depositions of the Debtors and their professionals regarding these topics. Accordingly, SVP respectfully requests that the Court exercise its broad authority to prevent the deposition and quash the Notice. Fed. R. Civ. P. 26(b)(2)(C), 26(c)(1); *see also MetroPCS v. Thomas*, 327 F.R.D. 600, 627-628 (N.D. Tex. 2018) (quashing subpoena on basis that the record did not support a determination that deposition testimony was relevant to the claims at issue).

34. In the alternative, if this Court does not quash the Notice in its entirety, SVP respectfully requests that the Court limit the questioning of any deposition of an SVP representative to SVP's knowledge, if any, about the details of the marketing process run by the Debtors. As discussed in Section I, *supra*, the focus of the confirmation hearing should be on whether the marketing process was conducted properly by the Debtors and was sufficient to attract the highest and best bids for their assets. To the extent SVP has factual knowledge about how the Debtors conducted the marketing process, any deposition should be limited to that topic and not invade SVP's internal strategic thinking. The OEC should not be permitted to seek information in a deposition that it is not permitted to seek through document discovery of SVP.

### III. The Parties Would Benefit From Additional Guidance Regarding the Scope of Discovery and the Confirmation Hearing

35. At the July 29, 2021 hearing, this Court expressed the view, consistent with its comments in past cases, that a theoretical desktop valuation may not be useful to the Court in the presence of a real-world marketing process. Prior to the Court's comments, the OEC had already served numerous discovery requests on the Debtors and SVP seeking all manner of financial information to support a valuation fight at confirmation. Indeed, the OEC has made no secret that it has retained valuation expert firms who will undertake that work.

36. On information and belief, there has been no change in the OEC's game plan for the confirmation hearing following the Court's comments. Although the OEC has (quite understandably) stood down on its valuation-related document requests directed to SVP, the OEC continues to press its valuation-related requests to the Debtors. To SVP's knowledge, the OEC likewise is continuing to prepare a theoretical desktop valuation to be revealed in expert reports, and will conduct fact and expert depositions regarding valuation and a contested valuation trial at confirmation. In other words, the OEC is running full speed ahead on a costly valuation fight, notwithstanding the Court's comments about the relevance of this exercise.

37. Given the timing of the discovery and confirmation hearing, SVP believes that the parties would benefit from additional guidance from the Court regarding the scope of discovery and the contours of the confirmation hearing. SVP is concerned that a multimillion dollar valuation fight is not a worthwhile use of estate resources in this context and that absent further guidance from the Court, that is exactly what the OEC plans to pursue.

## BASIS FOR EMERGENCY RELIEF

38. Pursuant to Local Rule 9013-1, SVP respectfully requests emergency consideration of this Cross-Motion by August 3rd, 2021. Emergency consideration is required due to the expedited time frame for these proceedings and the OEC's request for relief on the Motion to Compel no later than August 3, 2021.

## CONCLUSION

39. For all the foregoing reasons and for the reasons detailed in the Objection, SVP respectfully requests that the Court deny the Motion to Compel and grant the Cross-Motion, and order further relief as the Court may deem just and proper.

Dated: August 2, 2021

By: *Charles A. Beckham, Jr.*

| | |
|---|---|
| **HAYNES AND BOONE, LLP** | **DAVIS POLK & WARDWELL LLP** |
| Charles A. Beckham, Jr. | Damian S. Schaible (admitted *pro hac vice*) |
| Texas State Bar No. 02016600 | Elliot Moskowitz (admitted *pro hac vice*) |
| Arsalan Muhammad | Angela M. Libby (admitted *pro hac vice*) |
| Texas State Bar No. 24074771 | Aryeh Ethan Falk (admitted *pro hac vice*) |
| Martha Wyrick | 450 Lexington Avenue |
| Texas State Bar No. 24101606 | New York, NY 10017 |
| 1221 McKinney Street, Suite 4000 | Telephone: (212) 450-4000 |
| Houston, Texas 77010 | Facsimile: (212) 701-5800 |
| Telephone: (713) 547-2000 | Email: damian.schaible@davispolk.com |
| Facsimile: (713) 547-2600 | Email: elliot.moskowitz@davispolk.com |
| Email: charles.beckham@haynesboone.com | Email: angela.libby@davispolk.com |
| Email: arsalan.muhammad@haynesboone.com | Email: aryeh.falk@davispolk.com |
| Email: martha.wyrick@haynesboone.com | |

**COUNSEL FOR SVP**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on August 2, 2021.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.