United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 18, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 21-31948 |
| WASHINGTON PRIME GROUP INC., *et al.*, | § § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Kevin Barnes, a shareholder of Washington Prime Group Inc., filed objections to the fee applications of Greenberg Traurig and FTI Consulting, Inc. Mr. Barnes bases his objections on an alleged failure to disclose changes to the composition of the Official Committee of Unsecured Creditors during the period from July 26 to August 6, 2021. For the reasons set forth below, the Court overrules the objections.

## BACKGROUND

Washington Prime Group Inc., along with the other debtors in this case, filed voluntary petitions under chapter 11 on June 13, 2021. (ECF No. 1). The United States Trustee appointed the Committee on June 25. (ECF No. 168). The Committee initially consisted of U.S. Bank National Association (which acted as indenture trustee for certain noteholders), Nationwide Janitorial Services, Inc., and Parking Lot Services LLC. (ECF No. 168 at 1). Parking Lot Services and U.S. Bank National Association resigned from the Committee. (ECF Nos. 233, 1306 at 3). Wilmington Savings Fund joined the Committee after replacing U.S. Bank as the indenture trustee for certain noteholders, as reflected in a notice filed by the trustee on July 6, 2021. (ECF Nos. 233, 1306 at 3). The Committee then amended its bylaws to state that the Committee could consist of only one member. (ECF No. 1306 at 4). On July 26, Nationwide Janitorial Services resigned from the Committee after being paid in full by the debtor, leaving Wilmington Savings Fund as

the only creditor on the Committee.[1] (ECF No. 1053 at 9). Mountain Special Situations Fund, LLC and Clear Harbor Asset Management, LLC then joined Wilmington Savings Fund on the Committee, as reflected in the notice filed by the United States Trustee on August 7. (ECF No. 793 at 1).

Both Greenberg Traurig and FTI provided the Committee with professional services beginning around June 28, 2021. (ECF Nos. 236, 492). The Committee filed an application to retain Greenberg Traurig as legal counsel to the Committee effective as of June 28. (ECF No. 236). The Committee filed an application to retain FTI as financial advisor to the Committee effective as of June 28. (ECF No. 492). The Court authorized the retention of Greenberg Traurig on July 29. (ECF No. 701). Mr. Barnes filed an objection to the retention of FTI on August 2. (ECF No. 738). Mr. Barnes based the objection on allegations that Strategic Value Partners (the plan sponsor) leveraged its position as supermajority holder of the unsecured notes to exercise undue control over the Committee's composition by planting Wilmington Savings Fund on the Committee. (ECF No. 738 at 1). After a hearing, the Court authorized the retention of FTI on September 7 over Mr. Barnes's objection. (ECF No. 1029). However, the Court overruled the objection without prejudice to later objections over the issue of fee payment, reasoning that the Court understood "why there might be suspicion by Mr. Barnes, but that suspicion need[ed] to be carried forward into evidence." (ECF No. 1053 at 31). The United States Trustee filed a notice

---

[1] Every Committee member who resigned did so after being paid in full. Mr. Barnes suggests this indicates intent to manufacture a situation where Wilmington Savings Fund was the sole Committee member. However, as the Court pointed out on the September 7 hearing, those creditors were paid under the Court's authorization for the debtor to pay trade creditors, and there is no evidence to suggest any improper intent. (ECF No. 1053 at 20).

that the Committee was disbanded on August 17 after two of its three members resigned.[2] (ECF No. 858).

On November 3, 2021, Greenberg Traurig filed a fee application for payment covering the period from June 28 through October 21. (ECF No. 1151). FTI filed a fee application covering the period from June 28 through August 17 on November 12. (ECF No. 1162). Mr. Barnes filed his objections to both fee applications on November 26. (ECF Nos. 1185, 1186). The Court held a hearing on the matter on December 20. (ECF No. 1296).

## JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Section 1102(a) of the Bankruptcy Code charges the United States Trustee with the task of appointing a committee of unsecured creditors. 11 U.S.C. § 1102(a)(1). The United States Trustee also has statutory duties to monitor the committee. 28 U.S.C. § 586(a)(3)(E). Therefore, it is the purview of the United States Trustee to appoint and oversee the unsecured creditors' committee absent intervention by some other interested party. A party may, for example, petition the court to change the composition of the committee after notice and hearing. 11 U.S.C. § 1102(a)(4). The committee may hire and pay professionals—like legal and financial counsel—subject to the Court's approval of an application for their employment. 11 U.S.C. § 1103(a); FED. R. BANKR. P. 2014(a). The Procedural Rules for the Southern District of Texas require the application to be

---

[2] At the August 24, 2021 hearing, the Court stated that it was treating a "Notice of Disbandment" filed by the United States Trustee as a statement of fact rather than as an act of the United States Trustee. (ECF No. 922 at 13). All parties acquiesced. (ECF No. 922 at 13).

filed within 30 days of the professional beginning work for the committee. BANKR. LOC. R. 2014-1.

Rule 2019 of the Federal Rules of Bankruptcy Procedure requires certain disclosures to be made by both statutory and non-statutory committees. FED. R. BANKR. P. 2019(b)(1). The Rule excepts statutory committees appointed under § 1102 from the bulk of these disclosure requirements, but not the requirement to file an initial verified statement in certain circumstances. *Id*. at 2019(c)(2). This requirement is triggered when the committee "represents multiple creditors." *Id*. at 2019(b)(1). The Rule defines "represent" as "to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another." *Id*. at 2019(a)(2). Neither the mere appointment of a committee of unsecured creditors nor the resignation of members of the official committee meets this definition.[3] Once an initial statement has been filed, a committee must also make disclosures relating to material changes to facts in the initial statement "whenever [the committee] takes a position before the court or solicits votes on the confirmation of a plan." *Id*. at 2019(d). Neither the Code nor the Rules place any duty on professionals hired by the committee to make disclosures regarding changes to the composition of the committee when the duty to file an initial verified statement has not been triggered. Nor is there any case law suggesting they must make such disclosures. The Court may, on its own or on the motion of a party, determine whether a committee has failed to comply with the Rule 2019 disclosure

---

[3] The Committee Notes to the 2011 Amendments to Rule 2019 specifically clarify that "representation requires active participation . . . . [F]or example, an attorney who is retained . . . but who does not advocate any position before the court . . . does not represent the creditor . . . for purposes of this rule." FED. R. BANKR. P. 2019(a) advisory committee's note to 2011 amendment.

requirements. *Id*. at 1209(e)(1). A court order could feasibly require additional disclosures to be made by a committee, but the Court issued no such order in this case. 11 U.S.C. § 1102(b)(3)(C).

Mr. Barnes's concern seems to lie in his suspicion that the plan sponsor leveraged its position as an unsecured noteholder to replace U.S Bank with Wilmington Savings Fund as the indenture trustee to exert influence over the Committee. (ECF No. 1185 at 1). Mr. Barnes essentially repeats the accusations of impropriety he launched against the Committee in his objection to and hearing on the retention of FTI. (ECF Nos. 738, 1185, 1186). Though the Committee at one point only had one member, this alone does not suggest misconduct on the part of the Committee or its professionals. The Committee's bylaws allowed for a one-member committee, and there is no Code provision or Rule that disallows a one-member committee.[4] Mr. Barnes further alleges that the sole Committee member had connections to the debtor's plan sponsor, but this also does not alone suggest misconduct. Indeed, every Committee member on any official committee of unsecured creditors must hold a claim, which is necessarily a connection to the debtor. Yet, there can be no imputation of an improper conflict merely by the holding of a claim. The presence of claim holders on an unsecured creditors committee is the essence of the Committee process in chapter 11. Mr. Barnes did not provide any evidence to support his theory that the plan sponsor unduly influenced the Committee in the September 7 retention hearing, and he did not come forward with any evidence to support it at the hearing on this matter.

Mr. Barnes objected to the fees of professionals retained by the Committee, yet his objections are not rooted in any purported misconduct by the professionals. The professionals timely filed their retention and fee applications under the Local Rules. The United States Trustee

---

[4] The Code provides that a committee of creditors is "ordinarily" comprised of the seven largest creditors, but it does not mandate that structure and does not impose restrictions on how many members the committee must have at any given time. 11 U.S.C. § 1102(b)(1).

performed its oversight duties and did not raise any objection to the Committee, its membership, or the nature and quality of the services rendered by the professionals it retained. Mr. Barnes offered no evidence that Greenberg Traurig and FTI's representation of the Committee was tainted in any way that would show that they are not owed the fees incurred between July 26 and August 6, 2021.

Mr. Barnes's arguments that (i) the Committee failed to make required disclosures and (ii) the proper remedy for that failure is the denial of professional fees fall flat. The Committee never "took a position" or "solicited votes" within the meaning contemplated by Rule 2019, so the disclosure requirements were never triggered. Therefore, it would be inappropriate to withhold the fees earned by FTI and Greenberg Traurig for the period from July 26 to August 6 where there is no evidence the professionals did not fulfill their duties during that time. If Mr. Barnes had concerns about the Committee's composition during the case, he did not take advantage of the avenues the Code provides to address those concerns. He did not exercise his right to petition the Court to change the composition of the Committee. 11 U.S.C. § 1102(a). He did not exercise his right to file a motion with the court to determine whether the Committee had complied with its disclosure requirements. FED. R. BANKR. P. 2019(e)(1).

The disclosure requirements in Rule 2019 have their roots in fraudulent committee behavior in the pre-Bankruptcy Code days of receiverships. *In re Washington Mut., Inc.*, 419 B.R. 271, 277 (Bankr. D. Del. 2009). The Rule is designed to encourage transparency between members of a group and the entities who claim to be representing their interests "but are not otherwise subject to the control of the court." *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 453 (Bankr. S.D. Tex. 2009) (quoting *In re CF Holding*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992)). As demonstrated above, an official committee of unsecured creditors is "otherwise subject" to the

control of the court and surveillance of the United States Trustee. The Court is satisfied that the Code and the Rules provide sufficient oversight of the Committee without imposing the additional and redundant disclosure requirements Mr. Barnes argues were lacking here.

## **CONCLUSION**

The objections to the fee applications of Greenberg Traurig and FTI are overruled.

A separate order will be entered allowing the requested fees.

SIGNED 10/18/2022

_____
Marvin Isgur
United States Bankruptcy Judge